```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-28-09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
NORMAN DENIS and JANICE DENIS,

                      Plaintiffs,         06 Civ. 963 (PKC)

      -against-                      MEMORANDUM AND ORDER

NATIONAL RAILROAD PASSENGER
CORPORATION (d/b/a "AMTRAK"), LONG
ISLAND RAILROAD, SPRINT SPECTRUM L.P.,
NEXTEL OF NEW YORK, INC. and STEPLIN
CONSTRUCTION CORP.,

                      Defendants.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

        This personal injury action arises out of an accident that occurred in the Hilton Corridor of New York's Pennsylvania Station ("Penn Station") on October 22, 2005.[1] The case was tried before a jury in January 2009 and the jury returned a verdict finding defendant National Railroad Passenger Corporation ("Amtrak") 100% liable for plaintiffs' injuries. Amtrak now moves for post-verdict relief, pursuant to Rules 50(a) and (b) and 59(a) and (e), Fed. R. Civ. P., on its cross-claim for indemnification against defendants Sprint Spectrum L.P. and Nextel of New York, Inc. (collectively, "Sprint/Nextel"). For the reasons outlined below, Amtrak's motion is denied.

I.   Background

        Amtrak first asserted its cross-claim for indemnification in February 2006 and restated the claim in its December 31, 2007 Answer to the Second Amended Complaint. (Dkt. Nos. 3, 52.) Amtrak bases its claim on section 12.02 of the March 1, 2001 Master License

---

[1] Familiarity with the facts of this litigation is assumed and those facts will not be restated at length here.

Agreement (the "Agreement") between Amtrak and Nextel Communications, Inc. Section 12.02, entitled "Indemnification," states as follows:

> Without regard to negligence (of any degree), fault liability or strict liability on the part of Amtrak, its officers, directors, agents, contractors, and/or employees, Licensee agrees to release, defend, indemnify and hold Amtrak, its officers, directors, employees, agents and contractors, harmless from and against any and all claims, damages, losses, liabilities, costs and expenses, including attorneys' fees arising out of:
>
> . . . (b) Any personal injury to, or disease or death of, any person or persons, and any loss, damage, defacement, or destruction of property, <u>arising out of or incident to</u> the presence, activities, operations, or actions of Licensee, any Nextel Sublicensee, and/or their respective property, agents, contractors, or employees on or about the Rights-of-Way. . . .

(Trial Ex. 107, at 41-42.) (emphasis added). Amtrak maintains, as it has throughout this litigation, that plaintiffs' injuries arose out of Sprint/Nextel's cable installation work in the Hilton Corridor. As a result, Amtrak argues, section 12.02 requires Sprint/Nextel to bear the cost of Amtrak's defense and to indemnify Amtrak for the jury award. Sprint/Nextel does not contest the enforceability of section 12.02 or its potential application to the type of claim asserted.

In July 2008, the Court denied summary judgment on Amtrak's cross-claim. (Dkt. No. 174.) Amtrak moved for reconsideration of the Court's ruling and the Court responded as follows:

> Framed as a motion to reconsider, Amtrak's [motion] invites this Court to respond to a sequence of interrogatories. This Court declines. Amtrak, indeed, has an indemnification agreement with Sprint/Nextel. But there are genuine issues of disputed fact whether the drag line was used for a purpose arising from or incidental to the work of Sprint/Nextel.

(Order of September 8, 2008, Dkt. No. 203, at 2.)

2

On January 5, 2009, immediately prior to the start of trial, Amtrak's counsel confirmed that the indemnification claim remained outstanding. (Tr. at 11.) Amtrak's counsel also explained that Amtrak and Sprint/Nextel had drafted joint, proposed jury interrogatories that tracked the language of section 12.02. (Id. at 11, 19.) He emphasized that those interrogatories would enable the Court to rule on Amtrak's claim, as a matter of law, once the jury rendered its verdict. (Id.) "My cross-claims will be handled through those interrogatories," counsel stated, "and the Court will have the indemnification agreement, but it's my position that once the jury rule[s]—the jury gives [its] decision[] on those questions, . . . the Court is going to be able to make its decision. I don't even think you're going to need post[-]trial motions." (Id. at 17.)

In the same pre-trial colloquy, counsel for all three defendants confirmed that any relevant factual issues in the case would be presented to the jury through the special interrogatories and that no issue of fact necessary for resolution of Amtrak's indemnification claim would be reserved. (Id. at 15-16.) Amtrak's counsel specifically stated that: "It is my understanding that if [the jurors] check yes on those [interrogatories], or they check no on those, that those decisions will be dispositive, and . . . the Court will be able to then render its decision on indemnification . . . ." (Id. at 19.)

At trial, none of the defendants contested plaintiffs' account of the events leading to Mr. Denis' injury. All three, however, denied ownership of the drag line and actual knowledge of its origin or purpose. Amtrak emphasized that the drag line was attached to Sprint/Nextel cables that had been run through the Hilton Corridor soffit during Sprint/Nextel's pre-2005 installations. According to Amtrak, the physical arrangement of the drag line—which

was secured to Sprint/Nextel's cable at one end by a plastic tie-wrap—suggested that the drag line had been installed contemporaneously with the cable.

Amtrak moved for judgment as a matter of law, pursuant to Rule 50, Fed. R. Civ. P., at the close of the case and the Court reserved decision. (Tr. at 639.)

The jury returned its verdict on January 12, 2009. (Court Ex. 8.) Special Interrogatory No. 4 on the final verdict form asked:

> Does Mr. Denis' claim against Amtrak arise out of, or was it incident to, the presence, activities or operations or actions of Sprint Nextel, its contractor [Steplin Construction Corp. ("Steplin")], or an agent, contractor or employee of Sprint Nextel or Steplin?

(Id. at 2.) The jury answered "no" and assigned 100% of the fault for Mr. Denis's accident to Amtrak. (Id. at 2, 5.) The Court entered judgment on January 22, 2009, dismissing the Second Amended Complaint as to Sprint/Nextel and Steplin and awarding plaintiffs approximately $4.2 million against Amtrak. (Dkt. No. 222.)

On February 9, 2009, Amtrak served and filed a post-verdict motion seeking judgment as a matter of law, pursuant to Rules 50(a) and (b), Fed. R. Civ. P., or a new trial or amended judgment, pursuant to Rule 59(a) and (e), Fed. R. Civ. P. (Dkt. Nos. 223-25.) Amtrak raised four grounds for relief in its motion:

- the Agreement obligates Sprint/Nextel to defend, indemnify and/or hold Amtrak harmless in connection with plaintiffs' claims;

- the jury reached a seriously erroneous result in its answers to verdict form question numbers (2) and (4) and/or those answers constitute a miscarriage of justice;[2]

---

[2] Special Interrogatory No. 2 asked: "Was Amtrak negligent on exclusive instrumentality principles?" (Court Ex. 8.)

4

- the Court erred as a matter of law when it instructed the jury on the doctrine of res ipsa loquitur and permitted the jury to answer verdict form questions based on that doctrine; and

- the jury's damage award (i) deviates materially from reasonable compensation within the meaning of New York CPLR § 5501(c), (ii) lacks legally sufficient evidentiary support, and/or (iii) constitutes a seriously erroneous result.

On February 27, 2009, Amtrak informed the Court that it had reached a settlement-in-principle with plaintiffs and that its settlement obviated further consideration of any post-trial motions relating to the plaintiffs' verdict against Amtrak. (2/27/09 Letter from R. Joseph to Hon. P. K. Castel and all counsel of record.) Amtrak confirmed in the same letter that it continued to seek post-verdict relief as to its indemnification claim against Sprint/Nextel. (Id.)

Judge Marvin E. Aspen conducted a post-trial settlement conference between Amtrak and Sprint/Nextel on April 20, 2009 but no further resolution was reached.

II.    Rules 50 and 59

Rule 50(a) provides that "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party," the Court may, upon motion by the opposing party, grant judgment as a matter of law in the movant's favor. A motion under Rule 50(a) "may be made at any time before the case is submitted to the jury." If the issue is submitted to the jury, the movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after the entry of judgment under Rule 50(b), Fed. R. Civ. P. On a renewed motion under Rule 50(b), the court may "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Rule 50(b), Fed. R. Civ. P.

5

"A movant's burden in securing Rule 50 relief is particularly heavy after the jury has deliberated in the case and actually returned its verdict." Cross v. New York City Transit Authority, 417 F.3d 241, 248 (2d Cir. 2005). "Under such circumstances, the district court may set aside the verdict only where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him." Id. (citations, alterations and internal quotation marks omitted). In construing Rule 50, the Supreme Court has explained that:

> although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000) (internal citation and quotation marks omitted).

Amtrak also moves, pursuant to Rule 59(a) and (e), for a new trial or amended judgment granting its indemnification claim. In determining whether a new trial is appropriate under Rule 59(a), the Court applies a less stringent standard than on a motion for judgment as a matter of law. See Manley v. Ambase Corp., 337 F.3d 237, 244-45 (2d Cir. 2003); Katara v. D.E. Jones Commodities, Inc., 835 F.2d 966, 970 (2d Cir. 1987). "[F]or a district court to order a new trial under Rule 59(a), it must conclude that the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice, i.e., it must view the jury's verdict as against the weight of the evidence." Manley, 337 F.3d at 245 (internal quotations and citation omitted).

"District courts may alter or amend judgment [under Rule 59(e)] 'to correct a clear error of law or prevent manifest injustice.'" Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135, 153 (2d Cir. 2008) (citation and alteration omitted). "Rule 59(e) covers a broad range of motions, and the only real limitation on the type of . . . motion permitted is that it must request a substantive alteration of the judgment, not merely the correction of a clerical error, or relief of a type wholly collateral to the judgment." Id. (citing 11 Charles Alan Wright et al., FEDERAL PRACTICE & PROCEDURE § 2810.1 (2d ed. 2008)).

III.   Discussion

Amtrak's Rule 50 motion, in essence, argues that no reasonable jury could have found as this jury did in response to Special Interrogatory No. 4. It asks the Court to rule, as a matter of law, that plaintiffs' claims arose out of, or were incident to, Sprint/Nextel's work or presence in the Hilton Corridor. See Reply at 2. Alternatively, Amtrak asks the Court to amend the judgment or to permit a new trial of disputed factual issues relevant to its cross-claim. (Id.)

Amtrak contends that "the jury's finding cannot be reconciled with the evidentiary record and the overlay of applicable law." (Amtrak Br. at 12.) According to Amtrak, "there is no dispute [that] a hole was created in the front of the soffit by or for Steplin's subcontractor [in 2002]" and that, "but for the existence of that hole on October 22, 2005, the accident would never have taken place." (Id.) "For that reason alone," Amtrak argues, "plaintiffs' claim must be deemed to arise out of or be incident to the presence, activities or operations of Steplin's subcontractor Dean, entitling Amtrak to indemnification under the Agreement." (Id.) Amtrak does not support this argument with any citation to the trial record. See Amtrak Br. at 12; Reply at 3, 8.

7

Reviewing the record as a whole, the Court concludes that the jury's finding in Special Interrogatory No. 4 was not based on "sheer surmise" or "seriously erroneous." Rather it is rational, reasonable and well-supported by the evidence. Amtrak's own electrical construction supervisor described a series of possible, alternative causes for the physical conditions that led to Mr. Denis' accident. See Testimony of Amtrak supervisor Paul Fragiorgi, Tr. at 199:8-9, 229:20-230:3 (denying knowledge of who created the soffit hole); 230:9-24 (reviewing deposition testimony that he was unaware of any hole made by Steplin during Steplin's Hilton Corridor work); id. at 249:23-251:23, 272:6-11 (describing the physical effects of vandalism and homelessness in Penn Station); id. at 253:4-255:18 (acknowledging extensive cable work in Penn Station by unidentified contractors during the 2004 Republican National Convention); id. at 257:20-258:24 (describing pre-2005 cable work by the New York City Police Department and the renovation of a Hilton Corridor restaurant adjacent to the scene of Mr. Denis' fall). The president of Steplin testified that the drag line was not from Steplin's work or that of Sprint. See Testimony of Stephen Cohen, Tr. at 293:10-19 (describing the condition of tie-wraps inside the soffit as inconsistent with Steplin and Sprint/Nextel installation practice); id. at 298:10-16 (denying knowledge of who created the soffit hole and testifying that Steplin did not create the hole); id. at 317:10-15 (noting the absence of any reference to a drag line in Sprint/Nextel's Penn Station project specifications); id. at 318:5-13 (opining that the drag line recovered from the Hilton Corridor soffit would not have been sufficiently rigid for use in Steplin's cable installation). The Sprint/Nextel construction manager's testimony was consistent with that of Steplin's president. See Testimony of Jason Van Horn, Tr. at 338:7-9 (denying that Sprint/Nextel, or anyone working on its behalf, used the drag line in question for its work in the

Hilton Corridor); id. at 344:9-14 (testifying that he did not recall seeing a hole in the soffit upon completion of Steplin's work in the Hilton Corridor); id. at 362:13-363:12 (describing a final inspection of Steplin's work in the Hilton Corridor and testifying that no member of the inspection team, including the Amtrak representative present, observed or reported a hole in the soffit).

Although Amtrak asserts that "the only reasonable, non-speculative finding that can be made based on the probative evidence is that the ragged hole evolved from the hole first created for Sprint/Nextel in 2002" (Reply Br. at 8 (emphasis in original)), Amtrak does not support this assertion with citations to the record. Amtrak also admits, at page three of its opening brief, that "[e]very defendant denied creating th[e] ragged hole [from which the drag line hung on October 22, 2005] and no witness professed to know who had created it." (Amtrak Br. at 3.) Given the existence of trial testimony that would permit a reasonable fact-finder to conclude that neither Sprint/Nextel nor its contractor created the Hilton Corridor soffit hole during their installations, Amtrak's unsupported assertions do not demonstrate "such an overwhelming amount of evidence in favor of [Amtrak] that reasonable and fair minded men could not arrive at a verdict against [it]." Cross, 417 F.3d at 248. Nor do such assertions establish that "the verdict is a miscarriage of justice." Manley, 337 F.3d at 245. Amtrak's motion for judgment as a matter of law is denied. Its motion for a new trial on weight of the evidence grounds is also denied.

Amtrak also argues that, independent of the damages award, section 12.02 of the Agreement entitles it to recovery of its defense costs. (Amtrak Br. at 15.) Because plaintiffs' claim specifically alleged joint negligence by Amtrak and Sprint/Nextel "from the outset,"

9

Amtrak reasons, "Sprint/Nextel was unambiguously obligated . . . to defend Amtrak from plaintiffs' claim against Amtrak." (Reply at 10.) Amtrak supports this argument by citing case law from the District of Columbia that discusses an expansive indemnitor duty to defend in the insurance context.[3] Amtrak acknowledges, however, that "there does not appear to be any District of Columbia case law expressly applying these general principles to an agreement between two private parties, neither of which is an insurance company." (Amtrak Br. at 15.) Amtrak's argument for defense costs also suffers the same basic defect as its general indemnification claim, which is that the jury's finding in Special Interrogatory No. 4 precisely tracked the language of section 12.02 and affirmatively denied the existence of any causal relationship sufficient to trigger defense obligations under that provision.

        Finally, Amtrak argues that it is entitled to relief under Rule 59(a) because the Court erred in giving a res ipsa loquitur instruction to the jury. (Id. at 16.) Amtrak does not identify any legal error in the substance of the Court's res ipsa instruction. But "Amtrak had difficulties enough," it explains, "fighting off concerted finger-pointing attacks by the other parties" during trial. (Id. at 19.) According to Amtrak, the Court's decision to issue a res ipsa instruction "could well have provided the jury with the final motivation needed to find against Amtrak on every interrogatory question." (Id.) Amtrak appears to suggest that the entire verdict was tainted by the Court's inclusion of a res ipsa instruction because the jury interpreted that instruction as an invitation to improperly assign 100% of the fault for Mr. Denis' injury—on general negligence principles—to Amtrak. The Court declines to adopt Amtrak's theory in light

---

[3] Amtrak emphasizes throughout its briefs that the Agreement terms should be governed by District of Columbia law. Amtrak has not identified any material conflict between New York law and District of Columbia law, and the Court concludes that no further choice-of-law analysis is necessary to resolve the instant motion.

of the evidence discussed above, and it concludes that the jury's affirmative answer to Special Interrogatory No. 1 ("Was Amtrak negligent on general negligence principles?") precludes any showing of prejudice from the res ipsa instruction. Amtrak's request for a new trial on erroneous instruction grounds is denied. See, e.g., Time, Inc. v. Peterson Publishing Co., LLC, 173 F.3d 113, 119 (2d Cir. 1999).

IV. Conclusion

For the foregoing reasons, Amtrak's motion for post-verdict relief is denied in its entirety.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       September 25, 2009

11